**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHAMPIONSHIP, LLC,<br>an Illinois limited liability company, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| -vs- | ) | |
| | ) | Case No.: 1:20-cv-05782 |
| DAVID BATES, an individual and resident<br>of Wisconsin, and DBEC LLC, a Wisconsin<br>limited liability company d/b/a<br>DB ENTERTAINMENT COMPANY and<br>DB ENTERTAINMENT COMPANY SODA<br>BAR SYSTEMS, | ) | |
| | ) | **JURY DEMAND** |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, Championship, LLC, by and through its undersigned counsel, for its Complaint, including jury demand, against defendants, David Bates, an individual and resident of Wisconsin, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, states as follows:

**Nature of the Case**

1.     This is an action for injunctive relief and monetary damages arising out of Defendants' flagrant trademark infringement, sale of counterfeit goods, and credit card chargeback fraud in retaliation to Plaintiff's rightful decision to no longer do business with Defendants.

**Jurisdiction and Venue**

2.     This Court has jurisdiction of this action under 28 U.S.C. § 1331, 1338 and 1367. This action is filed under the United States Trademark Act of July 5, 1946, as amended, 15 U.S.C. § 1501, *et seq.* (the "Lanham Act").

3.     This Court also has jurisdiction of this action under 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     Venue is proper pursuant to 28 U.S.C. § 1391, as this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## The Parties

5.     Plaintiff, Championship, LLC, is an Illinois limited liability company ("Championship") with its principal place of business located at 840 Industrial Drive, Bensenville, Illinois 60106.

6.     Championship has been an important part of the billiard industry for over 50 years and is an industry leading manufacturer of the finest billiard fabrics, table covers, chalk, cushion rubber, component parts and accessories.

7.     Defendant, David Bates, is an adult individual who resides at 3700 East Elm Road, Oak Creek, Wisconsin 53134 ("Defendant Bates").

8.     Defendant, DBEC LLC d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, is a Wisconsin limited liability company with its principal place of business located at 3700 East Elm Road, Oak Creek, Wisconsin 53134 ("Defendant DBEC") (Defendant Bates and Defendant DBEC are collectively referred to herein as "Defendants").

9.     Defendant Bates is Defendant DBEC's registered agent and, upon information and belief, the founder, owner, and member/manager of Defendant DBEC.

10.     Defendants are online resellers of billiard products, including but not limited to billiard fabric, and at one time resold genuine and authentic Championship fabric and products purchased directly from Championship.

2

11.     As alleged in detail below, after Championship rightfully informed Defendants that Championship was no longer interested in doing business with Defendants and no longer wished to sell its products to Defendants, Defendants wrongfully retaliated against Championship by committing credit card chargeback fraud, trademark infringement, and the sale of counterfeit goods, to Championship's detriment and damage.

### Defendants' Credit Card Chargeback Fraud

12.     Between March 26, 2018 and May 7, 2018, Defendants completed 12 separate purchases from Championship for Championship billiard products totaling $5,390.25, and Defendant Bates submitted some of the purchase orders by e-mail.

13.      For all 12 purchases, Defendant Bates personally picked up and took the billiard products from Championship's place of business in Bensenville, Illinois.

14.     For all 12 purchases, Defendant Bates personally signed a work order when he was at Championship's place of business to pick up the billiard products.

15.     For all 12 purchases, Defendant Bates paid Championship for the invoice amount with one or more credit cards and all credit card transactions and payments initially cleared.

16.     Unrelated to these purchases, Championship subsequently informed Defendants that Championship was no longer interested in doing business with Defendants and no longer wished to sell its products to Defendants.

17.     After Championship advised Defendants it was no longer interested in doing business with Defendants, Defendants in retaliation requested fraudulent credit card chargebacks from the issuing banks for each of the 12 purchases totaling $5,390.25.

18.     Championship is informed and believes that Defendant Bates falsely told the issuing banks that the 12 purchases totaling $5,390.25 were not authorized transactions even

3

though Defendant Bates personally carried out the transactions at Championship's place of business, personally signed the work orders at Championship's place of business, and personally took and received the Championship products from Championship's place of business.

19. When Championship was notified of Defendants' requested chargebacks by the issuing banks, Championship promptly provided the issuing banks with the necessary information to dispute the requested chargebacks, including Defendant Bates' e-mail orders, the purchase invoices, the work orders Defendant Bates signed when he personally took the products from Championship's place of business, the original credit card transaction authorization, and the chargeback notifications from the issuing bank. True and correct copies of the aforementioned chargeback documents for the 12 purchases totaling $5,390.25 are attached hereto and incorporated herein as Exhibit A.

20. Despite the information Championship provided to the issuing banks to dispute Defendants' requested fraudulent chargebacks based on alleged unauthorized transactions, the issuing banks incorrectly approved the chargebacks and cancelled the 12 payment transactions totaling $5,390.25.

21. Following cancellation of the 12 payment transactions totaling $5,390.25, Defendants retained and did not return the Championship billiard products totaling $5,390.25.

**Championship's Famous Trademark**

22. Championship (and its predecessor, D & R Industries, Inc.) has been manufacturing the finest quality billiard products, parts, and accessories since 1963.

23. Championship is especially known as an industry leader for its "Championship Line" of billiard fabrics and sells more billiard fabric than all of its major competitors combined.

24. Championship's products can be found on the billiard tables of many of the

4

industry's major billiard table manufacturers.

25.     Since virtually its inception in 1963, Championship has been using a distinctive logo and/or mark consisting of a cup with the word "CHAMPIONSHIP" across the center (Championship's "mark").

26.     Championship owns a U.S. registration for its mark consisting of a cup with the word "CHAMPIONSHIP" across the center, for billiard fabric and bumpers. A true and correct copy of the USPTO registration for Championship's mark is attached hereto and incorporated herein as Exhibit B.

27.     In addition, Championship has common law rights in its mark and marks that incorporate its mark in connection with various other goods and services.

28.     As a result of the nature and quality of Championship's products and services, its widespread use of its mark, its media coverage, the high degree of consumer recognition of its mark, its position as an industry leader and innovator, its large and loyal customer base, its trademark registration, and other factors, Championship's mark is famous within the meaning of Section 43(c) of the United States Trademark Act, 15 U.S.C. § 1125(c).

29.     Through this usage, Championship has permeated the billiard industry and billiard players, table manufacturers, equipment manufacturers, parts and supplies manufacturers, and industry participants are accustomed to seeing and expect to see Championship and its mark in all aspects of the industry. Championship, and its mark, are famous.

**<u>Defendants' Sale of Counterfeit Goods</u>**

30.     Championship is informed and believes that after Championship advised Defendants it was no longer interested in doing business with Defendants and no longer wished to sell its products to Defendants, Defendants continued to sell their remaining stock of genuine

Championship products.

31.     Championship is informed and believes that after Championship advised Defendants it was no longer interested in doing business with Defendants and no longer wished to sell its products to Defendants, Defendants in retaliation began selling counterfeit goods as genuine Championship products under the Championship mark.

32.     Based on Championship's information and belief that Defendants were selling counterfeit goods as genuine Championship products under the Championship mark, Championship arranged one or more straw purchases from Defendants in 2020 of goods advertised and sold by Defendants as genuine Championship products under the Championship mark, including a March 5, 2020 purchase of "Championship Tour Edition Pool Table Felt – Tournament Green – 8 ft Cut."

33.     Pursuant to Championship's March 5, 2020 purchase of goods from Defendants advertised by Defendants as genuine Championship products under the Championship mark, Defendants sent Championship counterfeit goods of dramatically inferior quality to genuine Championship products.

34.     The inferior quality counterfeit goods sent by Defendants to Championship included a letter bearing Championship's mark, touting Championship's leadership in the billiard industry and its high-quality products, and congratulating and thanking the purchaser "for being part of the Championship family!" A true and correct copy of this letter sent by Defendants with counterfeit Championship goods is attached hereto and incorporated herein as Exhibit C.

35.     Championship never authorized, gave permission to, or consented to Defendants' use of Championship's mark to advertise or sell its products.

## COUNT I
## Open Account

36.     Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 21 of this Complaint, inclusive, as if fully set forth herein.

37.     The Championship billiard products that Defendants purchased from Championship between March 26, 2018 and May 7, 2018 totaling $5,390.25 were sold and delivered on open account.

38.     To date, Defendants have failed and refused to pay the $5,390.25 due and owing on the Championship billiard products, an amount Championship has variously demanded of Defendants but which Defendants have failed and refused, for no just cause, to pay.

39.     As a result of Defendants' acts as alleged above, Championship has incurred damages in the amount of $5,390.25.

## COUNT II
## Breach Of Written Agreement

40.     Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 21 of this Complaint, inclusive, as if fully set forth herein.

41.     Defendant Bates' e-mail orders, purchase invoices, signed work orders, and credit card transactions attached as Exhibit A formed a written agreement or agreements between the parties whereby Championship agreed to sell its billiard products to Defendants in exchange for Defendants' agreement to pay Championship $5,390.25 for said products.

42.     Despite receiving and accepting Championship's billiard products totaling $5,390.25, to date Defendants have failed and refused to pay Championship the agreed amount of $5,390.25, in breach of the written agreement(s).

43.     As a result of Defendants' acts as alleged above, Championship has incurred

damages in the amount of $5,390.25.

## COUNT III
## Breach Of Oral Agreement

44.     Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 21 of this Complaint, inclusive, as if fully set forth herein.

45.     Between March 26, 2018 and May 7, 2018, Championship and Defendants formed an oral agreement or agreements whereby Championship agreed to sell its billiard products to Defendants in exchange for Defendants' agreement to pay Championship $5,390.25 for said products.

46.     Despite receiving and accepting Championship's billiard products totaling $5,390.25, to date Defendants have failed and refused to pay Championship the agreed amount of $5,390.25, in breach of the oral agreement(s).

47.     As a result of Defendants' acts as alleged above, Championship has incurred damages in the amount of $5,390.25.

## COUNT IV
## Unjust Enrichment

48.     Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 21 of this Complaint, inclusive, as if fully set forth herein.

49.     Defendants have unjustly retained the benefit of Championship's goods totaling $5,390.25 to the detriment of Championship, and Defendants retention of this benefit violates fundamental principles of justice, equity, and good conscience.

50.     Defendants have been notified of the unjustly retained benefit but have failed and refused to return or pay for the conferred benefit.

51.     As a result of Defendants' acts as alleged above, Championship has incurred

damages in the amount of $5,390.25.

## COUNT V
### Fraud

52.　Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 21 of this Complaint, inclusive, as if fully set forth herein.

53.　During each of the 12 purchase transactions between March 26, 2018 and May 7, 2018 totaling $5,390.25, Defendants falsely represented and stated they would pay Championship for the purchase orders and for the products received and/or that they had paid for the purchase orders and for the products received with a credit card.

54.　Defendants knew the statements were false, believed the statements to be false, or made the statements in reckless disregard of whether they were true or false.

55.　Defendants made the statements with the intent to induce Championship to give its billiard products to Defendants pursuant to the purchase orders.

56.　Championship reasonably believed the statements and promises of payment and gave its billiard products to Defendants pursuant to the purchase orders in justifiable reliance on the truth of the statements.

57.　As a result of Championship's reliance, Championship has incurred damages in the amount of $5,390.25.

58.　As a result of Defendants' acts as alleged above, Championship is entitled to an additional award of punitive damages and attorneys' fees.

## COUNT VI
### Federal Trademark Infringement

59.　Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 11 and Paragraphs 22 through 35 of this Complaint, inclusive, as if fully set

forth herein.

60.    Defendants have used, and continue to use, Championship's mark, and/or marks that are highly similar to the registered Championship mark in appearance, sound, meaning, and commercial impression.

61.    Defendants services are the same as and/or related to some of Championship's services.

62.    Both Championship and Defendants offer their services through the same channels of trade, i.e. the internet.

63.    Championship is informed and believes, and based thereon alleges, that Defendants used Championship's trademark with knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to, and/or trade off the fame of Championship and the registered Championship mark.

64.    Championship has given notice of its registration and claimed trademark rights pursuant to section 29 of the Lanham Act, 15 U.S.C. § 1111. Championship is informed and believes Defendants continued, and continue, to use Championship's marks despite Championship's express objection thereto.

65.    Defendants' continued use of Championship's marks will injure Championship by causing a likelihood that the public will be confused or mistaken into believing that counterfeit goods or services provided by Defendants are associated with, endorsed, or sponsored by Championship.

66.    Championship has no control over the nature and quality of the goods or services offered by Defendants, and Championship's reputation and goodwill will be damaged and the value of Championship's registered and common law marks jeopardized by Defendants' continued use

of the Championship name and mark. Because of Defendants' sale of counterfeit goods under Championship's mark, the likelihood of confusion between the parties' marks, any defects, objections, or faults found with Defendants' goods or services under the marks would negatively reflect upon and injure the reputation that Championship has established for the goods and services it offers in connection with the registered Championship mark. As such, Defendants are liable to Championship for infringement of a registered mark under 15 U.S.C. § 1114.

67. Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Championship's mark, business, reputation, and goodwill. Championship has no adequate remedy at law as monetary damages are inadequate to compensate Championship for the injuries caused by Defendants.

68. As a result of Defendants' infringement of Championship's registered mark, Championship has incurred damages in an amount to be proven at trial.

69. Defendants' infringement of Championship's registered mark and sale of counterfeit goods is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of Championship's marks and an exceptional case within the meaning of Lanham Act section 35, 15 U.S.C. § 1117. Championship is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, and prejudgment interest.

## COUNT VII
## Federal Trademark Dilution

70. Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 11 and Paragraphs 22 through 35 of this Complaint, inclusive, as if fully set forth herein.

71.     As a result of the publicity afforded the Championship mark, and the strong and loyal base of customers that enjoy Championship's products and services, Championship's mark has a high degree of consumer recognition, is widely recognized by the general consuming public of the United States as a designation of Championship's services, and is famous.

72.     Championship's mark became famous before Defendants' adopted the Championship mark.

73.     Defendants' use of the same or highly similar Championship mark in its sale of counterfeit goods is likely to cause an association that impairs the distinctiveness of the Championship mark and weakens the connection in consumers' minds between the Championship mark and Championship's goods and services. Defendants' use of the Championship mark is likely to cause dilution by blurring based on a number of relevant considerations, including:

> a.     Defendants' mark is the same or highly similar to Championship's mark in wording and use of logo;
>
> b.     The Championship mark is inherently distinctive;
>
> c.     Championship exclusively licenses use of its marks to its business partners;
>
> d.     The Championship mark is widely recognized by the general consuming public; and
>
> e.     Championship is informed and believes, and based thereon alleges, that Defendants intend to create an association with the Championship mark.

74.     Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Championship's mark, business, reputation, and goodwill. Championship has no adequate remedy at law as monetary damages are inadequate to compensate Championship for the injuries caused by Defendants.

75.     As a result of Defendants' acts as alleged above, Championship has incurred damages in an amount to be proven at trial.

76.     Defendants' wrongful use of the Championship mark and sale of counterfeit goods is deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a willful intent to trade on Championship's reputation or to cause dilution of the famous Championship mark and an exceptional case within the meaning of Lanham Act section 35, 15 U.S.C. § 1117. Championship is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, and prejudgment interest.

## COUNT VIII
## Federal False Designation of Origin

77.     Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 11 and Paragraphs 22 through 35 of this Complaint, inclusive, as if fully set forth herein.

78.     In connection with Defendants' goods and services, Defendants have used in commerce and without Championship's authorization or consent the Championship mark, or marks highly similar to the registered and common law Championship mark.

79.     Such acts are likely to cause confusion and deception among the purchasing public and/or are likely to lead the consuming public to believe that Championship has authorized, approved or somehow sponsored Defendants' use of the Championship marks in connection with Defendants' sale of counterfeit goods.

80.     The aforesaid wrongful acts of Defendants constitute the use of a false designation of origin and false description or representation, all in violation of 15 U.S.C. § 1125(a).

81.     Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Championship's mark, business, reputation, and

13

goodwill. Championship has no adequate remedy at law as monetary damages are inadequate to compensate Championship for the injuries caused by Defendants.

82.     As a result of Defendants' acts as alleged above, Championship has incurred damages in an amount to be proven at trial.

83.     Defendants' wrongful use of the Championship marks and sale of counterfeit goods is deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a willful intent to trade on Championship's reputation or to cause dilution of the famous Championship mark and an exceptional case within the meaning of Lanham Act section 35, 15 U.S.C. § 1117. Championship is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, and prejudgment interest.

**COUNT IX**
**Common Law Trademark Infringement**

84.     Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 11 and Paragraphs 22 through 35 of this Complaint, inclusive, as if fully set forth herein.

85.     Defendants' acts alleged herein and specifically, without limitation, Defendants' use of the Championship mark and sale of counterfeit goods, is in violation of the common law.

86.     Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Championship's mark, business, reputation, and goodwill. Championship has no adequate remedy at law as monetary damages are inadequate to compensate Championship for the injuries caused by Defendants.

87.     As a result of Defendants' acts as alleged above, Championship has incurred damages in an amount to be proven at trial.

88.     Defendants' wrongful use of the Championship marks and sale of counterfeit goods is deliberate, willful, and in reckless disregard of Championship's trademark rights, entitling Championship to the recovery of punitive damages.

## COUNT X
## Common Law Unfair Competition

89.     Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 11 and Paragraphs 22 through 35 of this Complaint, inclusive, as if fully set forth herein.

90.     Championship is informed and believes, and based thereon alleges, that Defendants have engaged in and continue to engage in unfair competition by using the Championship mark and selling counterfeit goods, with the intention of interfering with and trading on the business reputation and goodwill engendered by Championship through hard work and diligent effort.

91.     Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Championship's mark, business, reputation, and goodwill. Championship has no adequate remedy at law as monetary damages are inadequate to compensate Championship for the injuries caused by Defendants.

92.     As a result of Defendants' acts as alleged above, Championship has incurred damages in an amount to be proven at trial.

## COUNT XI
## Violation of the Illinois Uniform Deceptive Practices Act, 815 ILCS §§ 510, *et seq.*

93.     Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 11 and Paragraphs 22 through 35 of this Complaint, inclusive, as if fully set forth herein.

94.     By the acts described herein, Defendants have engaged in unlawful and unfair

15

business practices that have injured and will continue to injure Championship in its business and property, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510, *et seq.*

95.     Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Championship's mark, business, reputation, and goodwill. Championship has no adequate remedy at law as monetary damages are inadequate to compensate Championship for the injuries caused by Defendants.

96.     As a direct and proximate result of Defendants' conduct alleged herein, Defendants have been unjustly enriched and should be ordered to disgorge any and all profits earned as a result of such unlawful conduct.

## COUNT XII
## Trademark Dilution, Illinois Trademark and Registration Act, 735 ILCS §§ 1036, *et seq.*

97.     Championship realleges and incorporates by reference the allegations contained in Paragraphs 1 through 11 and Paragraphs 22 through 35 of this Complaint, inclusive, as if fully set forth herein.

98.     The Championship mark is distinctive and famous within the meaning of section 65 of the Illinois Trademark and Registration Act, 765 ILCS § 1036/65.

99.     Defendants' use of the Championship mark began after the Championship mark became famous.

100.    Defendants' continued use of the Championship mark is likely to cause injury to Championship's business reputation and/or the dilution of the distinctive quality of Championship's famous mark, in violation of the Illinois Trademark and Registration Act, 765 ILCS § 1036/65.

101.    Defendants' acts alleged above have caused, and if not enjoined will continue to

16

cause, irreparable and continuing harm to Championship's marks, business, reputation, and goodwill. Championship has no adequate remedy at law as monetary damages are inadequate to compensate Championship for the injuries caused by Defendants.

102.    Defendants' wrongful use of the Championship mark and sale of counterfeit goods is deliberate, willful, and in reckless disregard of Championship's trademark rights, entitling Championship to the recovery of damages in an amount to be proved at trial, and treble damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Championship, LLC, prays:

A.    That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count I of the Complaint, and that Championship be awarded damages in the amount of $5,390.25, plus costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

B.    That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count II of the Complaint, and that Championship be awarded damages in the amount of $5,390.25, plus costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

C.    That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count III of the Complaint, and that Championship be awarded damages in the amount of $5,390.25, plus costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

D.    That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count IV of the Complaint, and that Championship be awarded damages in the amount of $5,390.25, plus costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

E.    That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count V of the Complaint, and that Championship be awarded damages in the amount of $5,390.25, plus punitive damages, attorney's fees, costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

F.    That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count VI of the Complaint, and that Championship be awarded damages in an amount to be proven at trial, plus costs incurred in this action and any other relief deemed just and appropriate by this Court;

G.    That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count VII of the Complaint, and that Championship be awarded damages in an amount to be proven at trial, plus treble damages, attorney's fees, costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

H.     That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count VIII of the Complaint, and that Championship be awarded damages in an amount to be proven at trial, plus treble damages, attorney's fees, costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

I.     That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count IX of the Complaint, and that Championship be awarded damages in an amount to be proven at trial, plus punitive damages, costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

J.     That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count X of the Complaint, and that Championship be awarded damages in an amount to be proven at trial, plus costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

K.     That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count XI of the Complaint, and that Championship be awarded damages in an amount to be proven at trial, plus costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

L.       That this Court enter judgment in its favor and against Defendants, David Bates, individually, and DBEC LLC, a Wisconsin limited liability company d/b/a DB Entertainment Company and DB Entertainment Company Soda Bar Systems, on Count XII of the Complaint, and that Championship be awarded damages in an amount to be proven at trial, plus treble damages, costs incurred in this action, prejudgment interest, and any other relief deemed just and appropriate by this Court;

M.       That this Court grant preliminary and permanent injunctive relief enjoining Defendants and all others acting in concert with and having knowledge thereof, from using the Championship mark, and any similar trade name or mark or variant thereof, as a trade name, trademark, service mark, domain name, or for any other purpose;

N.       That this Court order Defendants to account to Championship any and all revenues and profits that Defendants have derived from their wrongful actions and to pay all damages which Championship has sustained by reason of the acts complained of herein, and that such damages be trebled;

O.       That this Court award Championship the costs of this action and reasonable attorneys' fees and expenses;

P.       That this Court award Championship punitive damages; and

Q.       That this Court grant such other and further relief as it should deem just.

**Demand For Jury Trial**

Plaintiff, Championship, LLC, hereby demands a trial by jury on all issues for which a trial by jury may be had on its Complaint.

Dated:  September 29, 2020                              Respectfully submitted,

                                                       **CHAMPIONSHIP, LLC**


                                                By:    /s/ Peter K. Moroh
                                                       Peter K. Moroh (ID # 6225676)
                                                       Attorney for Plaintiff,
                                                       CHAMPIONSHIP, LLC

LAW OFFICES OF PETER K. MOROH
22 West Washington Street
Suite 1500
Chicago, Illinois 60602
Tel: (312) 214-3241
Fax: (312) 896-5978
Pmoroh@msn.com